FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 23, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALFREDO G., | No. 4:18-CV-05184-JTR |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 17, 23. Attorney D. James Tree represents Alfredo G. (Plaintiff); Special Assistant United States Attorney Thomas Elsberry represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 8. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

## JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on December 5, 2013, alleging disability since August 30, 2008[2] due to amputated fingers on his left hand, bipolar disorder, anxiety, depression, PTSD, learning disability, ADHD, and sleeping disorder. Tr. 155. The applications were denied initially and upon reconsideration. Tr. 203-10, 213-17. Administrative Law Judge (ALJ) Larry Kennedy held an initial hearing on January 14, 2016, Tr. 76-129, and a supplemental hearing on June 9, 2017, Tr. 130-52. The ALJ issued an unfavorable decision on August 28, 2017. Tr. 22-41. Plaintiff requested review from the Appeals Council. Tr. 332, 461-64. The Appeals Council denied the request for review on September 24, 2018. Tr. 1-5. The ALJ's August 2017 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on November 21, 2018. ECF No. 1.

## STATEMENT OF FACTS

Plaintiff was born in 1976 and was 33 years old as of the amended alleged onset date. Tr. 39. He attended school through the 8th grade and never completed a GED. Tr. 87. In 1994 he was in a motor vehicle accident where his left hand was pinned under a car, resulting in amputation of several fingers on his left hand. Tr. 808. He has held a series of jobs with minimal earnings, working primarily in fields, food production, and general labor. Tr. 352, 382. He has a long history of drug and alcohol use and treatment. Tr. 691, 740, 840, 949, 967-1001.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*,

---

[2] Plaintiff later amended the alleged onset date to March 1, 2010. Tr. 22.

201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*,

359 F.3d 1190, 1193-94 (9th Cir. 2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On August 28, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 25.

At step two, the ALJ determined Plaintiff had the following severe impairments: amputation of the first 3 fingers of the left hand, depressive disorder vs. major depressive disorder, anxiety disorder, and drug and alcohol addiction. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 28-29.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found he could perform work with the following specific limitations:

> The claimant has no restrictions in standing, walking, and sitting, with normal breaks. The claimant can lift up to 20 pounds occasionally and lift and/or carry up to 10 pounds frequently with both upper extremities or with the right upper extremity alone. With the non-dominant left upper extremity alone, the claimant can lift up to 10 pounds at a time and occasionally lift or carry articles like docket files, ledgers, and small tools. The claimant can use the non-dominant left upper extremity as a guide, but cannot use it for forceful gripping, grasping, turning, fingering, or feeling. The claimant cannot climb, crawl, or work at heights.
>
> The claimant can perform simple, routine tasks and follow short, simple instructions. The claimant can do work that needs little or no judgment and can perform simple duties that can be learned on-the-job in a short period.

> The claimant requires a work environment, with minimal supervisor contact. (Minimal contact does not preclude all contact; rather, it means contact does not occur regularly. Minimal contact also does not preclude simple and superficial exchanges and it does not preclude being in proximity to the supervisor).
>
> The claimant can work in proximity to coworkers but not in a cooperative or team effort. The claimant requires a work environment that has no more than superficial interactions with coworkers.
>
> The claimant cannot deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. Incidental contact of a superficial nature with the general public is not precluded.
>
> The claimant requires a work environment that is predictable and with few work setting changes.

Tr. 29.

At step four, the ALJ found Plaintiff had no past relevant work. Tr. 39.

At step five, the ALJ determined that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff was capable of performing, including the jobs of bakery conveyor line worker and toy stuffer. Tr. 40.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. Tr. 41.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by (1) failing to find intellectual/learning disorder to be a medically determinable severe impairment at step two; (2)

improperly evaluating the medical opinion evidence; and (3) making improper step five findings.  Within the discussion of the opinion evidence, Plaintiff also asserts the ALJ failed to fully develop the record when he did not order a consultative exam.

## DISCUSSION

**1.     Step two**

Plaintiff argues the ALJ erred in finding intellectual disorder/learning disorder to be a non-medically determinable impairment at step two.  ECF No. 17 at 9-12.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has any medically determinable severe impairments.  20 C.F.R. §§ 404.1520(a)(ii), 416.920(a)(ii).  The impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §§ 404.1521, 416.921.  The claimant bears the burden of demonstrating that an impairment is medically determinable and severe.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

The ALJ found Plaintiff had severe mental impairments, including depressive disorder and anxiety disorder.  Tr. 25.  However, he determined that the record was insufficient to find learning disorder or intellectual disorder to be medically determinable impairments.  Tr. 26-27.  The ALJ found diagnoses of learning disorder to be based solely on Plaintiff's self-report regarding his educational history, and not on independent testing.  Tr. 26.  He further found Dr. Marks' IQ testing and subsequent diagnosis of an intellectual disorder to be unsupported, due to Dr. Marks' failure to review any other record, Plaintiff's lack of candor regarding his substance abuse, other providers describing Plaintiff as having average intelligence, Plaintiff's contradictory reports regarding his educational history, Plaintiff's own statements that he believed he was mentally

capable of working, and Dr. Marks' equivocation regarding the precise diagnosis. Tr. 27.

Plaintiff argues the ALJ's rationale is not supported by substantial evidence, is inconsistent with the record, and misinterprets Dr. Marks' statements. ECF No. 17 at 10-12. He further asserts that if the ALJ questioned the validity of the IQ testing, he should have arranged for further testing mentioned by Dr. Marks to confirm the diagnosis. *Id.* at 11.

The Court finds the ALJ's analysis to be supported by substantial evidence. With respect to "learning disorders," the ALJ accurately noted that the diagnosis was given based only on Plaintiff's reports of special education as a child. Tr. 800, 841 ("learning disorder NOS by hx"). No objective testing was performed to assess Plaintiff's learning capabilities. *See* Social Security Ruling 96-4p ("regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.").[3] The ALJ's analysis is supported.

With respect to "intellectual disorder," the ALJ offered significantly more discussion. Tr. 27. While the Court finds that some of the rationale offered by the ALJ applies more to the weight to be given to Plaintiff's allegations and Dr. Marks' opinion as a whole, the ALJ offered sufficient reasons for his conclusion that an intellectual disorder was not medically determinable.

---

[3] Available at https://www.ssa.gov/OP_Home/rulings/di/01/SSR96-04-di-01.html. This Ruling has since been rescinded, but was in effect at the time of the ALJ's decision. Federal Register, Vol. 83, No. 115, page 27816 (effective June 14, 2018).

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

Most importantly, Dr. Marks was not without doubt in her diagnosis. Tr. 749. As an introduction to her report, she stated:

> While every effort is made to insure accuracy, it is based on client self-report and clinical presentation at the time of the interview. Other records may or may not have been available for review. As a result there is always the chance that factors such as criminal history or substance abuse may have been underreported. The reader is advised that client presentation may differ from situation to situation and the most accurate diagnostics are based on several observations over time and in multiple settings. As such, other sources of information in addition to this report should be considered, when available, to give the most accurate clinical picture of and prognosis for the individual.

Tr. 749. She later noted:

> [Plaintiff's] full scale score of 56 places him in the mildly intellectually disabled range. Best practice requires academic and adaptive scores. Those are not covered by DSHS ABD assessment and were not administered. He will be given the diagnosis of mildly intellectually disabled but a caveat will be included that further assessment is needed to firm up his diagnosis.

Tr. 752. These two statements undermine the diagnosis of an intellectual disorder. The ALJ appropriately followed Dr. Marks' caveat that other sources of information should be considered to give the most accurate clinical picture. Considering Plaintiff's lack of candor regarding his substance abuse history and ongoing use, along with other evidence such as his statements that he did not believe himself to be disabled based on mental impairments and the lack of any other source diagnosing an intellectual disorder, the ALJ's conclusion is supported by substantial evidence.

Even if the failure to list his intellectual disorder or learning disorder as medically determinable was error, the error would be harmless because step two was resolved in Plaintiff's favor. Plaintiff fails to identify any credited limitations

associated with intellectual disorder or learning disorder that were not considered by the ALJ and incorporated into the RFC. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). While the ALJ's finding of these conditions as non-medically determinable was a factor in his later discussion of Dr. Moon and Dr. Marks' opinions regarding Plaintiff's functional limitations, the ALJ offered other rationale for disregarding those functional assessments. *See infra*. The ALJ's step two finding is legally sufficient.

**2. Opinion evidence**

Plaintiff alleges the ALJ improperly weighed the opinion evidence. ECF No. 17 at 12-18. He specifically challenges the ALJ's treatment of treating sources Dr. Brooks, ARNP Thomason, and PA-C Shelton, and examining sources Dr. Moon and Dr. Marks. He further asserts the ALJ gave undue weight to the non-examining doctors' opinions over those of the treating and examining sources. *Id.*

***a. Treating doctor, Victor Brooks, MD***

When a treating physician's opinion is contradicted by another physician, the ALJ may reject the opinion by providing "specific and legitimate reasons," based on substantial evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Doctor Brooks completed a one-page check-the-box form regarding Plaintiff's ability to work. Tr. 748. He checked a box indicating he did not believe Plaintiff was capable of performing any type of work on a continuous basis. *Id.* The ALJ gave this opinion little weight, noting there was no narrative explanation for the opinion, and due to extenuating circumstances, there were no treatment notes to corroborate the opinion. Tr. 35. He further indicated that the longitudinal record and other opinion evidence did not support Dr. Brooks' opinion. *Id.*

The lack of explanation and lack of support from any treating records are both specific and legitimate reasons to discount the opinion from Dr. Brooks. 20

C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."); s*ee also Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014)(noting the opinions provided were accompanied by numerous records, "and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit."). Plaintiff asserts the ALJ inconsistently applied this factor, as the state agency opinions are also check-the-box forms. ECF No. 17 at 12. However, the state agency opinions contain a summary of the records reviewed and an explanation for the basis of the opinions. Tr. 155-65, 179-88. There is no inconsistency.

### b. *Treating sources, Jared Shelton, PA-C, and Aaron Thomason, ARNP*

An ALJ may discount the opinion of an "other source," such as a nurse practitioner, if he provides "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Mr. Shelton completed a DSHS form in 2010 opining Plaintiff had marked to severe limitations stemming from his left hand and arm pain, and was thus limited to sedentary work. Tr. 499. Mr. Thomason completed a similar form, opining Plaintiff was capable of lifting and carrying no more than 10 pounds, and could stand for six hours in a workday with standard breaks and the ability to move around frequently. Tr. 514. Both sources stated Plaintiff could participate in job searching or employment classes. Tr. 500, 515.

The ALJ gave each of these opinions little weight, noting they were not acceptable medical sources and the opinions were contrary to the opinions of several doctors and contrary to Plaintiff's assertion that he could lift 25 pounds. Tr. 35. The ALJ also found Mr. Thomason's opinion to be inconsistent with medical evidence in the file showing no impairment to Plaintiff's right upper extremity and documenting no limitations in his ability to stand or walk. *Id.*

Plaintiff only challenges the ALJ's interpretation of the record with respect to Plaintiff's statement that he can lift 25 pounds. ECF No. 17 at 12-13. He argues the form on which Plaintiff made this assertion did not ask about an ongoing ability to lift and carry, and therefore does not indicate that Plaintiff believed himself capable of lifting 25 pounds regularly throughout a day. Tr. 399. The ALJ's interpretation of the record is reasonable. Though Plaintiff urges an alternative reading, "if the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

Furthermore, even if the ALJ erred in his interpretation of Plaintiff's statements, Plaintiff has failed to challenge any of the ALJ's other rationale for disregarding these opinions. The consistency of a medical opinion with the record as a whole is a germane factor for an ALJ to consider in evaluating the weight due to an "other source." 20 C.F.R. §§ 416.927(c)(2)(4), 416.927(f). Inconsistency with other medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th 2005).

### c. Examining doctors, Tae-Im Moon, Ph.D., and N.K. Marks, Ph.D.

When an examining physician's opinion is contradicted by another physician, the ALJ is required to provide "specific and legitimate reasons" to reject the opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Plaintiff underwent multiple exams through the Washington State Department of Social and Health Services, three with Dr. Moon and one with Dr. Marks. Tr. 808-12 (Moon, 2011), 799-803 (Moon, 2012), 839-44 (Moon, 2013), 749-54 (Marks, 2015). The ALJ gave partial weight to Dr. Moon's 2012 exam,

and little weight to the other three. Tr. 36-37. Plaintiff argues the ALJ gave insufficient reasons for rejecting each of the opinions. ECF No. 17 at 14-17.[4]

### i. Dr. Moon, 2011

In her 2011 opinion, Dr. Moon diagnosed Plaintiff with dysthymia and methamphetamine abuse in partial remission, and found he would have mild to moderate limitations in work-related activities. Tr. 809-10. She recommended sheltered employment, noting his combination of learning problems and amputated fingers interfered with finding and keeping employment. Tr. 811.

The ALJ gave this opinion little weight, noting Dr. Moon was not qualified to assess Plaintiff's physical abilities and that a learning disorder was not a medically established impairment. Tr. 37. He also noted the opinion was inconsistent with Plaintiff's ability to work in the past in a non-sheltered place of employment, with the job ending due to a down-turn in business and not Plaintiff's impairments. *Id.*

### ii. Dr. Moon, 2012

In 2012, Dr. Moon diagnosed Plaintiff with depressive disorder and learning disorder by history. Tr. 800. She again noted mild to moderate limitations in work-related functions, and recommended medication assessment and job skills training and assessment through vocational rehabilitation. Tr. 801-02. She opined Plaintiff's impairment would last six months with available treatment. Tr. 802.

The ALJ gave this opinion partial weight, noting it was generally consistent with the overall evidence, but giving it less weight than other opinions due to the short duration and the lack of a narrative statement. Tr. 36.

### iii. Dr. Moon, 2013

---

[4] Though this section of Plaintiff's brief bears the header "Dr. Marks" it also addressed the ALJ's treatment of Dr. Moon's opinions.

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

In 2013, Dr. Moon diagnosed Plaintiff with depressive disorder, learning disorder by history, and alcohol abuse, and additionally noted rule out diagnoses of methamphetamine abuse and PTSD. Tr. 841. She found mostly mild to moderate limitations, but noted Plaintiff was markedly impaired in following detailed instructions and learning new tasks. Tr. 841-42. She found Plaintiff would be so limited for 12 months, and recommended treatment for depression and anxiety, a physical evaluation to assess his hand limitations, and job skills training accounting for his physical abilities. Tr. 842. She further noted: "Once he is stabilized, the clt would benefit from working. He may need to work in a sheltered work situation given his learning disability and handicapping condition associated with missing fingers on his left hand." *Id.*

The ALJ gave this opinion little weight, noting Dr. Moon relied in part on Plaintiff's unreliable self-reports and reviewed no outside records, and that the opinion was inconsistent with Plaintiff's own assertions that he could work. Tr. 37-38. He also found Dr. Moon's opinion that Plaintiff was disabled to be inconsistent with the recommendation that he be assessed for job capabilities based on his physical limitations. Tr. 38.

      *iv. Dr. Marks, 2015*

In 2015, Dr. Marks diagnosed Plaintiff with intellectual disability, major depressive disorder, and unspecified anxiety disorder. Tr. 752. She found he had marked and severe limitations in nearly all work-related activities. *Id.* She recommended he apply for Social Security disability, and noted he would need to be employed in a sheltered setting with accommodations for both his cognitive deficits and his hand. Tr. 753.

The ALJ gave this opinion little weight. Tr. 36-37. He found the IQ testing to not be fully reliable and found intellectual disorder was not a medically determinable impairment. Tr. 39. He further noted Dr. Marks relied largely on Plaintiff's subjective responses and reviewed no records, and was therefore

unaware of Plaintiff's noncompliance with treatment and false statements regarding past and ongoing substance abuse. *Id.*

    v.  *Discussion*[5]

  Plaintiff argues the ALJ's rationale is insufficient. He asserts the ALJ improperly ignored the fact that Dr. Moon and Dr. Marks offered opinions that were consistent with each other and uncontradicted, thus invoking the "clear and convincing" standard. ECF No. 17 at 16. He further asserts that both doctors had objective bases for their opinions, and their status as examining doctors put them in a better position to evaluate Plaintiff's abilities than the non-examining doctors, to whom the ALJ afforded great weight. *Id.* at 14-15. Finally, he argues Dr. Moon's recommendation for job training and vocational assessment in 2013 is consistent with her recommendation for sheltered work. *Id.* at 15.

  The Court finds the ALJ did not err in his evaluation. The opinions from Dr. Moon and Dr. Marks were contradicted by other opinions in the file. Thus, the ALJ was only required to provide specific and legitimate reasons for disregarding them, as opposed to the more stringent "clear and convincing" standard encouraged by Plaintiff.

  As discussed above, the ALJ adequately explained his rationale for finding learning disorder and intellectual disorder to not be medically established. To the extent the examining doctors relied on those diagnoses for formulating their opinions, the ALJ sufficiently explained his rejection.

  An ALJ also may consider an opinion's consistency with the record as a whole, the amount of explanation offered by the source, and the source's area of specialty. 20 C.F.R. §§ 404.1527(c), 416.927(c). These were all factors the ALJ evaluated in assigning weight to the various opinions, including noting the

---

  [5] The Court will address the ALJ's rationale for all of the opinions in one discussion as this is how Plaintiff presented his objection.

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

psychologist was not qualified to evaluate physical limitations, the opinions were inconsistent with Plaintiff's own statements and past work history, and that minimal explanation was offered on some of the forms.

Additionally, a doctor's opinion may be discounted if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008). Dr. Marks specifically noted the possibility that substance use and legal history may have been unreported, and advised that the longitudinal record would give the most accurate clinical picture. Tr. 749. The ALJ specifically pointed to multiple false statements Plaintiff made to Dr. Marks and Dr. Moon regarding his past treatment and substance history that undermined the limitations offered.

The Court finds the ALJ offered specific and legitimate reasons for discounting these opinions.

### d. State agency opinions

Plaintiff argues the ALJ should not have afforded significant weight to the non-examining state agency doctor opinions, as they only reviewed a portion of the records, and the ALJ cited to only a few exams as evidence that the opinions were "generally consistent with the longitudinal evidence." ECF No. 17 at 17-18.

Plaintiff fails to assign any specific legal error to the ALJ's actions, and merely offers an alternative interpretation of the record. An argument that the factors indicate the ALJ could have decided the claim a different way does not demonstrate the ALJ was wrong. The fact that the state agency doctors did not review Dr. Marks' opinion does not render them unreliable, as the ALJ offered adequate rationale for rejecting Dr. Marks' opinion. The ALJ's overall discussion of the evidence provides support for his conclusion that the state agency opinions were consistent with the record.

### 3. Consultative exam

Plaintiff argues the ALJ erred in failing to order a consultative exam, particularly in light of Dr. Brooks' records being unavailable and the state agency reviewing sources only reviewing "one third of the total pages of the medical file." ECF No. 17 at 13.

The obligation to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Those circumstances were not present in this claim. The record contains evidence of Plaintiff's treatment for his mental health and for his hand impairment. Other than asserting he was experiencing more pain and stiffness, Plaintiff maintained his primary impairment stemmed from his amputated fingers, an injury which occurred in 1994. Tr. 98-99. The ALJ appropriately relied on the available evidence from the state agency reviewing doctors and other examining and treating sources in assessing Plaintiff's physical capabilities. Tr. 34.

**4. Step five findings**

Plaintiff argues the ALJ failed to meet his step five burden when he found there were jobs that existed in significant numbers in the national economy that Plaintiff was capable of performing. ECF No. 17 at 18-20. Specifically, Plaintiff argues the jobs the ALJ identified do not exist in significant numbers, as testified to by the vocational expert. *Id.* Plaintiff relies on evidence submitted with his brief, showing data compiled from a commonly used vocational tool, Job Browser Pro. ECF No. 17-1, Exhibit A.

At step five, ALJs are permitted to rely on the testimony of a vocational expert when resolving complex vocational questions. 20 C.F.R. §§ 404.1566, 416.966; *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005). The vocational expert testified about jobs that existed in the United States that were consistent with Plaintiff's RFC and the numbers they existed in. Tr. 115-21. Therefore, the ALJ's findings are supported by substantial evidence.

Plaintiff argues for the first time before this Court that, in effect, the vocational expert's testimony was wrong. By referencing a commonly used resource for vocational data, Plaintiff argues the actual existence of the identified jobs is in fact much lower than the vocational expert testified. ECF No. 17 at 19-20. Plaintiff provides no explanation for his failure to raise this issue during the administrative proceedings. No challenge was made before the ALJ as to the source or validity of the vocational expert's testimony, and the evidence proffered in Exhibit A was not submitted to the ALJ or the Appeals Council. The facts of this case are precisely aligned with those of *Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017), which held that "when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel." *Shaibi*, 883 F.3d at 1109.

Plaintiff argues the issue was not waived because the Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103 (2000), held Social Security claimants were not bound by issue-exhaustion in a request for review before the Appeals Council. ECF No. 25 at 11. However, *Shaibi* was issued well after *Sims*, and contains a lengthy discussion of the consistency of the two opinions. *See Shaibi*, 883 F.3d at 1109-10. This Court is bound by the Ninth Circuit ruling in *Shaibi*, and thus holds Plaintiff forfeited the issue of the reliability of the vocational expert's numbers by failing to raise any challenge during the administrative proceedings.

Finally, Plaintiff argues that two of the jobs (outside deliverer and escort vehicle driver) require driving, which Plaintiff is unable to do given his lack of driver's license and his suspended driver's privileges. ECF No. 17 at 19. As Defendant points out, the ALJ did not find Plaintiff capable of performing these jobs. Tr. 40. Though the vocational expert identified them at the hearing as being consistent with the given hypothetical, Tr. 117, the ALJ did not include them in the decision. There is no error on this point.

# CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error and is therefore affirmed. Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 23**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED January 23, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE